## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MATHIAM VERWEY,<br><br>Plaintiff,<br><br>v.<br><br>SPUDNIK EQUIPMENT COMPANY LLC,<br><br>Defendant. | Civil No. 12-890 (JRT/JSM)<br><br><br><br>**MEMORANDUM OPINION AND ORDER ON MOTION FOR SANCTIONS** |

Stuart L. Goldenberg, **GOLDENBERG LAW, PLLC**, 800 LaSalle Plaza, Suite 2150, Minneapolis, MN 55402, for plaintiff.

Theodore J. Waldeck and Timothy W. Waldeck, **WALDECK LAW FIRM P.A.**, 121 South Eighth Street, Suite 1400, Minneapolis, MN 55402, for defendant.

Plaintiff Mathiam Verwey brought this action for injuries he suffered while using a potato trailer manufactured by defendant Spudnik Equipment Company, LLC ("Spudnik"). The parties settled, and Verwey now brings this motion for sanctions against Spudnik on the grounds that Spudnik failed to issue a timely payment of settlement funds to Verwey. The Court will deny Verwey's motion because it finds that he has not presented evidence of bad faith on Spudnik's part with regard to the timing of the payment.

## BACKGROUND

After a motion hearing on Spudnik's motion for summary judgment on November 6, 2013, Verwey and Spudnik reached a settlement agreement on November 20, 2013. (Aff. of Stuart L. Goldenberg, Ex. A at 2, Jan. 16, 2014, Docket No. 34; *id.*, Ex. B at 2.)  The settlement agreement was confirmed in an email from Spudnik to Verwey:

> This will confirm settlement of this case in the sum of $150,000.00.  As I mentioned to you, it will require a release signed by your client and a separate release signed by the work comp carrier.  I am requesting of you a W-9 and I need directions on how the check should be made payable.  I will be forwarding the releases to you shortly.

(*Id.*, Ex. A at 2.)  Spudnik sent the release to Verwey for signature on November 21, 2013. (Aff. of Jason M. Stoffel, Ex. A, Jan. 20, 2014, Docket No. 36.)  Verwey returned the release via email on December 4, 2013, (Goldenberg Aff., Ex. D at 2) and Spudnik received the release by mail on December 6, 2013 (Stoffel Aff., Ex. B).  The release included indemnification language and released Spudnik from any and all claims resulting from the incident that was the subject of the suit; it did not contain any language about the timing of Spudnik's satisfaction of any settlement funds.  (*See id.*, Ex. C at 6-7)

When Verwey had not yet received payment on December 12, 2013, Verwey's counsel contacted Spudnik that day. (Goldenberg Aff., Ex. E at 2.)  Verwey's counsel told Verwey that Spudnik indicated that its insurance company had mailed the check to Spudnik and that they would call when it was ready.  (*Id.*)  Counsel for Verwey again contacted Spudnik on December 13, 16, and 18, as Verwey had still not received the check. (*Id.*, Ex. C ¶ 3.)  On December 20, 2013, Verwey had not received the check and

Verwey's counsel sent a written notice to Spudnik indicating that if payment was not received within three days he would seek further remedies. (*Id.*, Ex. F at 2.)

Verwey claims that during this time he communicated with counsel daily, requesting updates on the status of the money because his mother was severely ill and he needed the funds to visit her in South Africa. (Mem. in Supp. of Mot. for Sanctions at 3, Jan. 16, 2014, Docket No. 33; Goldenberg Aff., Ex. C ¶ 5.) Unfortunately, his mother passed away on December 14, 2013. (Goldenberg Aff., Ex. C ¶ 4.) On December 23, 2013, Verwey informed his counsel that he needed to purchase a plane ticket to fly to South Africa for his mother's funeral and that he could not afford the plane ticket without the settlement funds. (*See id.*, Ex. G at 2.) Verwey's counsel again contacted Spudnik on December 24, 30, and 31 about the funds. (*Id.*, Ex. C ¶ 3, Ex. H at 2-3.) Pointing to emails between his counsel and Spudnik, Verwey claims that on December 30 Spudnik agreed to wire the funds to Verwey. (Mem. in Supp. of Mot. for Sanctions at 3 (citing Goldenberg Aff., Ex. H).) Exhibit H does not actually include any evidence that Spudnik agreed to wire the money – it includes only Verwey's counsel's emails to counsel for Spudnik about the logistics of wiring the funds. (*See* Goldenberg Aff., Ex. H.)

The Court contacted the parties seeking their stipulation of dismissal on January 2, 2014, (*id.*, Ex. I at 2) and scheduled a phone conference for January 8, 2014 (*id.*, Ex. I at 3; Minute Entry, Jan. 8, 2014, Docket No. 28). Counsel for Verwey continued to contact Spudnik, including on January 2, 6, and 7. On January 2, counsel for Verwey emailed the following to Spudnik:

> It is now 5:00 pm and we still have not received this wire transfer. Your client has been promising this money for weeks. Each day it is a different excuse. Today your office actually told us "it had been wired" which turned out not to be true. My client continues to call and I tell him what is being told to me. Each time the money doesn't come, I look like a fool.

(*Id.*, Ex. I at 3.) On January 3, 2014, counsel for Spudnik sent an email to counsel for Verwey stating "STUART please find verification of transfer. Please advise if your bank has received it. Sorry for all the problems[.]" (*Id.*, Ex. J at 2.) The email included in its history a prior email from the director of casualty claims for Spudnik's insurance company, Edward Grady, to counsel for Spudnik, in which Grady stated "I have attached the wire transfer documentation. I will check with our finance dept [sic] to verify the exact time of this transaction." (*Id.*) Later that afternoon, Grady contacted counsel for Verwey directly, stating "I want to assure you that the settlement payment was input into our system and has been authorized. . . . I will contact you via email and phone by 5:00 your time regarding the wire. I have been advised that it should be completed and I want to confirm." (*Id.* at 3.) Counsel for Verwey responded indicating that it had not been received as of 3:30 p.m., (*id.*) and emailed again at 5:41 p.m. stating "I did not hear from you at 5:00. Once again we have not received this money today despite your promises. It is now 5:30 pm. Shame on you. We will be asking for interest, fees, costs, and sanctions" (*id.* at 4).

Spudnik acknowledges that Verwey indicated at various times between December 6 and January 7, 2014 that he wanted the funds transferred soon, and that "[i]n response, Spudnik indicated that it would make payment as requested," but that it "face[d] frustration in administratively completing immediate payment." (Mem. in

Opp'n to Mot. for Sanctions at 2, Jan. 20, 2014, Docket No. 35.)  Spudnik has presented documentation of what appears to be a wire transfer on January 3, 2014 at 3:21 pm (*see* Stoffel Aff., Ex. D at 10), which Spudnik claims was complicated because apparently there were two separate IOTLA accounts for Verwey's insurer (Mem. in Opp'n to Mot. for Sanctions at 2; *see also* Stoffel Aff. Ex. D at 11 (email from Grady to counsel for Spudnik stating "I am awaiting final confirmation from my CFO. . . . What we think is that there was a problem with plaintiff counsel's bank as it required deposit into what is really 2 accounts.")).

On Monday morning, January 6, counsel for Verwey sent another email to Grady and counsel for Spudnik:

> Mr. Grady called me after 5[:]30 on Friday and promised again that the money had been transferred late Friday night and it should be in our account on Saturday.  He apologized and said he would pay interest on the money from the time the release was received until Sat.  He told me he would confirm this in an email to me.  I have not received an email or the money.
>
> When I checked on Saturday the money still had not been received.  I just called our bank this morning and the money STILL has not been transferred.  This is really like a sick joke on my client.  Are you really this cruel and malicious?  I have spent endless amounts of time and energy on this.  I will look forward to speaking to the Judge on Wed.

(Goldenberg Aff., Ex. K at 2.)  Counsel for Verwey sent another email on January 7 at 1:42pm indicating that the wire transfer had not yet been received.  (*Id.*, Ex. L at 2.) Grady sent an email to counsel for Spudnik on January 7 at 3:55 p.m. indicating that "[t]he funds are in plaintiff counsel's account." (Stoffel Aff., Ex. E.)  After the transfer, Verwey indicated to Spudnik that he would move the Court for sanctions for untimely

payment, after which Spudnik sent Verwey a check for $6,340 representing interest "plus an additional amount for plaintiff's trouble," which Verwey accepted. (Mem. in Opp'n to Mot. for Sanctions at 3; Stoffel Aff., Ex. F.)

Verwey now brings this motion, arguing that "Spudnik engaged in impermissible and unethical conduct by unnecessarily delaying the distribution of the promised funds, failing to issue funds as promised on certain dates, and . . . misrepresenting that the funds were on their way on multiple occasions." (Mem. in Supp. of Mot. for Sanctions at 5-6 (footnote omitted).) Verwey seeks attorneys' fees for the time his counsel expended in collecting the settlement funds and has submitted an itemized account of that time, totaling 23.8 hours, calculated at a rate of $600 per hour to amount to $14,300. (Goldenberg Aff., Ex. M.)

Spudnik "acknowledges that it indicated that it would make payment prior to January 7, 2014" and that it "encounter[ed] administrative difficulty in completing payment," but argues that receiving payment within a month and a day of Spudnik's receipt of the signed release by mail is objectively reasonable and does not warrant sanctions. (Mem. in Opp'n to Mot. for Sanctions at 1-2.) It points to the facts that there was no indication during the settlement negotiations that time was of the essence or a material consideration, and that it took Verwey two weeks to return the signed releases to Spudnik in support of its position. It argues that, without timing considerations or specifications in the settlement agreement, Spudnik's obligation was only to make the payment within an objectively reasonable time. (*Id.* at 3.)

## ANALYSIS

I.  **STANDARD OF REVIEW**

Verwey asks the Court to exercise its inherent power to sanction bad faith conduct as recognized by the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The Supreme Court in *Chambers* held that the "assessment of attorney's fees is undoubtedly within a court's inherent power." 501 U.S. at 45. "[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotations omitted). However, "[a] court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at 50. "[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745-46 (8th Cir. 2004) (internal quotations omitted).

According to the Eighth Circuit, when the Court imposes sanctions under its inherent power, "[a] bad faith finding is specifically required in order to assess attorneys' fees," *id* at 751, although a finding of bad faith is not necessary to impose other types of sanctions, including exclusion of evidence, *see Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (showing of bad faith was not required where the case "involve[d] neither an assessment of attorneys' fees nor dismissal," but rather excluding a party's evidence after the other party made a showing of spoliation). Thus, in order for the Court to award attorneys' fees as requested by Verwey, it must find that Spudnik acted in bad faith.

## II.   SPUDNIK'S ACTIONS

Verwey argues that the record indicates that Spudnik acted in bad faith by "unnecessarily delaying the distribution of promised funds, failing to issue funds as promised on certain dates, and even misrepresenting that the funds were on their way on multiple occasions." (Mem. in Supp. of Mot. for Sanctions at 5-6 (footnote omitted).)  Of these accusations, the Court considers the strongest basis for a finding of bad faith to be Verwey's argument that Spudnik and its counsel made misrepresentations at various points in their communications that the funds had been sent when they in fact had not been.  But the evidence Verwey has submitted does not include proof of any such statement.  Spudnik's statements regarding the January 3, 2014 attempt to wire the funds might come close to such a representation, but Spudnik has provided evidence that it **did** attempt to wire the funds on that date and evidence suggesting that it simply did not work because of a complication with Verwey's counsel's bank accounts.  The evidence of Spudnik's communication on December 12 indicates that Spudnik represented that its insurance company had mailed a check to Spudnik, not that Spudnik itself had mailed a check when it in fact had not.

Spudnik's delay in arranging for and sending the settlement payment was not admirable or exemplary, particularly given the very difficult situation Verwey faced that made his need for the money especially time-sensitive.  But Verwey's evidence falls short of suggesting that Spudnik's delay was caused by bad faith on its part.  Thus, the Court declines to exercise its inherent sanction power to penalize Spudnik with attorneys'

fees for its delay in delivering the settlement funds to Verwey.[1] The Court therefore need not discuss the reasonableness of the fees requested by Verwey.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions [Docket No. 30] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that this action is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 10, 2014                            s/John R. Tunheim
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                     United States District Judge

---

[1] Verwey cites to the Minnesota Unfair Claims Practices Act ("UCPA") in a footnote as providing a five-day payment requirement for insurance settlements.  *See* Minn. Stat. § 72A.201, subd. 5 (stating that it is an "unfair settlement practice" for "an insurer, an adjuster, a self-insured, or a self-insurance administrator," to fail to "issue payment for any amount finally agreed upon in settlement of all or part of any claim within five business days from the receipt of the agreement by the insurer or from the date of the performance by the claimant of any conditions set by such agreement, whichever is later").  Verwey does not explain how this bolsters his case for sanctions—there is no clear basis for applying the UCPA's five-day timeframe for payment to the settlement funds here.  The UCPA governs "trade practices in the business of insurance," Minn. Stat. § 72A.17, and does not appear to apply to third parties seeking payment from an insurer.  Furthermore, if it does apply, it would have been a violation by Spudnik's **insurer**, not Spudnik itself, and would not necessarily warrant sanctions against Spudnik.  Finally, even if a five-day deadline applied, the Court would nevertheless decline to impose attorneys' fee sanctions as an exercise of its inherent power to sanction without a showing of bad faith, which is not present here.